The GRACIOUS LADY SERVICE, INC.

v.

WELCOME WAGON INTERNATIONAL, INC.

and

William Penn Broadcasting Company, Inc.

Civ. A. No. 38436.

United States District Court
E. D. Pennsylvania.

Feb. 14, 1969.

Stanley Bilker, Philadelphia, Pa., for plaintiff.

Pepper, Hamilton & Scheetz, by K. Robert Conrad, Philadelphia, Pa., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOSEPH S. LORD, III, District Judge.

### FINDINGS OF FACT

1. Plaintiff, The Gracious Lady Service, Inc., is the successor to Practical Surveys, Inc., and is a Pennsylvania corporation having an office and principal place of business at 1819 John F. Kennedy Boulevard, Philadelphia, Pennsylvania.

2. Defendant, Welcome Wagon International, Inc., (hereafter "W.W."), is a Delaware corporation, having its principal office at 145 Court Street, Memphis, Tennessee, and a place of doing business in the Eastern District of Penn-

sylvania at Mill and Moredon Roads, Meadowbrook, Pennsylvania.

3. Defendant, William Penn Broadcasting Company, Inc., (hereafter "WPEN"), is a Pennsylvania corporation, having a place of business at 2212 Walnut Street, Philadelphia, Pennsylvania and operates WPEN and WPEN–FM broadcasting stations.

4. Plaintiff presently employs varying numbers of women on a part-time basis in the region where a particular promotion is to be conducted who, depending upon the type of promotion, perform the following services:

(a) Contacting by telephone or in person prospective customers of the client to promote the opening of a client's new branch or outlet.

(b) Contacting by telephone or in person prospective and existing customers of the client with a view towards increasing sales by enhancing good will, encouraging the opening and use of charge accounts, and/or describing the various services provided by the client.

(c) Serving as hostesses at the opening of the client's new branch or outlet.

5. W.W. has been in business since 1928 and presently operates in 3,000 communities in the United States, Canada, Great Britain, and Australia. It engages women in these various communities to visit families who have recently moved into the area.

W.W.'s hostesses furnish the new families with information and material about different aspects of the community including the local merchants and tradesmen who are W.W.'s clients.

6. W.W. represents approximately 100,000 clients in approximately 200 different businesses.

7. On August 7, 1963, plaintiff's predecessor applied for registration of a service mark "THE GRACIOUS LADY SERVICE". On July 14, 1964 the United States Patent Office granted to plaintiff a registration of the said service

mark on the Principal Register with the word "Service" disclaimed except in the association shown. First use in commerce since September 1, 1961 was claimed of the mark for Advertising Services, Public Relations Advisory Services, and Personnel and Employment Counseling Services, all utilizing specially trained women who conduct surveys, perform market research, act as hostesses, and otherwise promote public relations and good will for marketing of products and services of others.

8. Plaintiff has used the words "GRACIOUS LADY", "GRACIOUS LADIES" and "THE GRACIOUS LADY SERVICE" since September 1961, alone and in various combinations, in written script, Old English typeface, in capital letters, and in television broadcasts.

9. Since at least the early 1940's until 1948, W.W. hostesses have sometimes been referred to as "gracious ladies" in the Welcome Wagon magazine and by the general public.

10. Plaintiff has continuously since 1961 expanded and increased its budget for advertising its mark. It has used such media as Credit World in 1961, National Retailers Merchants Association 1962; 1963 to date Booth costs $400 plus ad copy materials which reached 7,000 to 8,000 persons in attendance; American Bankers advertising costs per issue $400 at 50 issues per year; Women's Wear Daily, circulation 69,000, ad costs $400 per page 26 times per year; Savings and Loan News and conventions Stores Magazine; National Petroleum News, in addition to miscellaneous matchcovers, postcards, cover-pieces and the like.

11. Plaintiff has expanded its service business to a gross volume of $2,000,000 per year in 1968, including such substantial clients as Gulf Oil Corporation, Sears, Roebuck & Co., John Wanamaker, Philadelphia National Bank, Standard Oil Co., Abraham & Strauss, and the like throughout the United States and Canada.

12. Plaintiff now employs on both a full time and part time basis over 3,500 women who act as interviewers, hostesses and supervisors, and expends in excess of $1,000,000 per year in salaries. Copyrighted training manuals have been prepared for setting forth specific duties, routines and responsibilities of the personnel.

13. Between January 5 and April 2, 1965, W.W. caused certain scripts to be broadcast over the facilities of WPEN four times a week, from January 1965 to April 1965 (32 instances) an extract of the pertinent portions of the one-minute radio announcement appearing below as follows:

"You know there are 5,000 gracious ladies spreading the community red carpet from coast to coast * * * 5,000 Welcome Wagon hostesses making newcomers feel at home in their new homes. * * *

"There are Welcome Wagon openings in the Greater Philadelphia area, in Coatesville and in Downingtown * * or in South Jersey * * * for the Welcome Wagon emblem is displayed by only those civic minded businessmen who sponsor the work of your Welcome Wagon hostess * * * the gracious lady who calls on new families in your community. * *"

14. At the time of the broadcast of the above two radio advertisements, W. W. was unaware of plaintiff's existence.

15. Plaintiff has used its mark since 1961 in the adjectival sense (with the word "service" or "brand" expressed or implied following the words "GRACIOUS LADY" and/or "GRACIOUS LADIES"). Such adjectival usage was used in an identifying sense to identify plaintiff's service and to distinguish such services from those of others.

16. The dominant portion of plaintiff's mark in both the certificate of registration and in use is "GRACIOUS LADY".

17. The words "gracious ladies" in the broadcasts referred to in Finding of Fact No. 13 were descriptive of and were used fairly and in good faith only to describe the personal characteristics of W.W.'s personnel, and were used otherwise than as a trade or service mark.

18. The use of the words "gracious ladies" as used by defendant W.W. are not likely to cause confusion or to deceive.

## CONCLUSIONS OF LAW

1. This case arises under the Act of Congress relating to trademarks. Title 15 U.S.C. § 1051 et seq.

2. This court has jurisdiction over the subject matter (Title 28 U.S.C. § 1338) and the parties.

3. It is a defense to an action for infringement that "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, * * * of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin." Title 15 U.S.C. § 1115(b) (4); 3 Callmann, Unfair Competition and Trademarks (2nd Ed.), § 85.1, p. 1667.

4. As the words "gracious ladies" were used by defendant W.W., such use is not likely to cause confusion or mistake or to deceive.

5. Plaintiff is not entitled to enjoin defendant W.W. from using the words "gracious ladies" fairly and in good faith as descriptive of the characteristics of its personnel.

6. Judgment should be entered for defendants and the complaint should be dismissed.